Okay, we have five appeals this morning, four of them are going to be argued. The first argument of the morning is Doctrine No. 22-2263, Fitbit v. Koninklijke Philips. Mr. Kinodt, you've reserved three minutes, correct? That's correct. Okay. Please begin whenever you're ready.  Two salient points will aid this court in resolving the appeal. First, Philips elected to prove obviousness by anticipation. And thus, Philips must prove that Federalil discloses all elements of the claim arranged exactly as in the claim. And second, the independent claims here recite a very precise arrangement. It required generating an emergency alert message with two components, primary and supplemental, and the primary must have each of four required subcomponents. So this is a very precise four-plus-one arrangement in the message. And we maintain that Federalil does not disclose at all two of the primary subcomponents, actor ID information and emergency type classification. But what is indisputable is that it does not disclose those in the required four-plus-one message to a responder. And under Therosense, that's dispositive. So we think that that alone compels reversal. The board decided this case on 103, correct? It did, but on the grounds that anticipation is the epitome of obviousness. Well, so be it. That's a nice phrase. But the decision was based on obviousness. Right, Your Honor. But the analysis, the appropriate analysis would normally be focused on obviousness and the standards and the tests to establish obviousness, correct? Well, Your Honor, I think this Court has said that is not necessary. If you prove anticipation, you prove obviousness. There are experts disclaimed having done any traditional obviousness-type analysis. There is no evidence at all on whether a person's skill in the art would modify the disclosures of the references to reach the claim. So I think that's not available to them. I thought this appeal was just about whether substantial evidence supports the board's fact-finding about whether Theriault discloses two claim limitations, one being the actor ID information and the other being emergency-type classification. Well, Your Honor, there's certainly substantial evidence. But at the end of our brief, we do make the whole Theracent's point. And we — I mean, I'm just looking at the headings of your blue brief. Right. And that seems to be the direction of what this case was all about. Right, Your Honor. But I would point you to, if you look at 63, part of the substantial evidence, there has to be substantial evidence that these are disclosed in the claim message, which is a 4-point-plus-1 message. And at 63 to 64, we make the point, now, whether this is substantial evidence or maybe it should have been more framed as a legal issue, but they still have to satisfy the rigors of anticipation. But I'll turn now to the actor identification information. And I think that that determination is flawed in multiple respects. So Phillips relies on the disclosure of a unique device ID. But critically, Therial discloses no such ID as being part of a message to a responder, as the claims require. The only disclosures of the unique —  I have not seen this particular argument that I saw in your gray brief. I didn't see it in your blue brief. Was it in your blue brief? Yes, Your Honor. It's in blue brief 20 to 2232, where we say the unique identification code is merely to verify messages to and from the server. I'm sorry. You want me to look at page 32? Yes. So there's a number of places that I would take you. I would take you to the best place so that I can see the words. All right. So I just would say the earlier we make the point throughout, it has to be in the claim message. That is a message to the responder. And in 32, so we talk about that Theriot never discloses that its system... I'm sorry. Where are you right now? Middle of 32. Theriot never discloses that its system uses the monitor's unique identification code to identify the person being monitored. Instead, Theriot expressly explains what the unique identification code is, a code identifying portable monitor 14, and what it is used for, merely to verify messages to and from the server. And then what, in the response brief, Phillips came back and said, oh, they've conceded it because they said it's in a page message. But there are different kinds of page messages. And that you do have the unique ID in a page message that is sent back to the monitor to verify that there's proper receipt. But we never said that it's part of the message to the responder. Well, just to let you know, this page of your blue brief, to me, reads more about whether it's accurate and fair to equate a monitor ID code with a person ID identification. So that's... Well, Your Honor, we say it's used merely to verify messages to and from the server. So that would exclude any kind of message to the responder. Is that the best place where you make this argument? Well, I think that's probably the primary part. But we would say, I mean, throughout... Let me just go to 20... First of all, we're saying that it has to be included in the primary message component. We say that throughout. That is implicitly, at least, the primary message component is the message component in a message to the responder. Your Honor, there's a limitation, F, in Claim 1, which talks about how you electronically send both the primary and supplemental alert message components to at least one designated responder. Yes. And I didn't see on appeal you challenging that claim limitation as it relates to Theriol. And that would be the claim limitation, I would think, where you would want to say, okay, regardless of whatever the content is of the page message in Theriol, that page message isn't getting sent to the responder, C, our claim limitation 1F. But that's not the argument. The argument the whole time through has been about what is the content of the page message in Theriol, specifically the monitor ID code. Can the monitor ID code be fairly said to be corresponding to your claim actor identification information? And, Your Honor, I think we say it again in 21-22, where we would say that the primary component of the alert message, that's the message to the responder, must actually include the actor identification information. While there's no disclosure in Theriol to support the Board's no theory, Theriol expressly supports Fitment's arguments that the monitor's unique code is used to identify the monitor from verifying messages to and from the portable monitor. But I would also point out with regard to this, actor, a unique device ID, and here these devices are transferable, they're actor agnostic, they do not itself convey in the message what the actual actor identification. They have to either, the responder has to have independent knowledge or the system must associate the device with the subscriber. But there's no disclosure of it being in a 4 plus 1 message. I'd like to turn now, if I may, to the emergency type classification. And there are also multiple reasons there. There the petition relied on the disclosure in Theriol that a page message, and that would include the page message to the responder, may have detailed information regarding the nature of the alarm condition. But detailed information, just simply saying there may be generic detailed information, which can be anything, it could be blood pressure is 160 over 90, is not a classification of an emergency by type. And the Board relies on figure 9, but that is simply a log of reportable alarm conditions. They are not emergency type, and they're not in the primary alert message. This is a graphical user interface that simply provides a log. Does the Board find that Theriol's detailed information consists of a number of things, and they, say, want to steal the art, would understand some part of that detailed information to track to the primary message of your claims, and some of it to track to the supplemental message? And isn't that supported by substantial evidence? I don't think that's – that doesn't satisfy anticipation, Your Honor. If you look at – you know, a genus doesn't disclose every species. If you had the disclosure of a mammal, that wouldn't necessarily disclose a mouse. I'm sure, but no one said that here. Didn't they point to specific aspects of the detailed information in Theriol and track some of that to one part of your claims and some of it to another part of your claims? But the key is, Your Honor, also they did not point to any part of a 4 plus 1 message that had that information. So this is a part of the fundamental error of cobbling together different parts of Theriol. This is simply a log of reportable events, and it is not part of any alert message. And so they could have had a theory if they pursued single reference obviousness. They said – they could have said a person of skill in the art would have modified the primary message and could have included that. That's not their theory. Their theory is anticipation. They have to be held to it. But I would also point out that these are – the figure 9 events are not emergency type classifications. And, again, one of the key points is that Theriol is a monitoring system, not strictly an emergency response system. And its definition of alarm condition is anything requiring a reportable event to a monitor, whereas an emergency situation requires that the actor either desire or require assistance. So if you look at these – Breyer, Crying episode doesn't count? No, that's not an emergency. These are duration of one minute, four minutes. That's not an emergency, Your Honor. But even if it was, it's not a classification by type. How do we define what an emergency is? I mean, we're in fact-finding territory right now. I don't recall there being a claim construction dispute about the meaning of emergency type classification. So now I have to try to understand, what is your conception of emergency type classification? That's so indifferent that it couldn't include no diaper change or a crying episode. Well, you have a definition in the patent, Your Honor, and that is that the actor has to require or desire assistance. And the things that are listed in Figure 9, and I think they all have to be considered certain, you know, to be of a kind, and those are things like, is the monitor connected? Is it disconnected? Has a diaper been changed? That's something that somebody may want to monitor, may want to know, but that doesn't show that the actor requires or desires assistance. The diaper may be unsullied. So, and the same with the crying episode. This is a one-minute, four-minute. In some circumstances, crying could indicate that there's the presence of an emergency condition, but this is not itself a classification of an emergency by type. Why isn't this argument better understood as an untimely claim construction argument and that what you really had in mind was a very narrow conception of this term? Well, I think what we argue, Your Honor, it's not of the kind that is exemplified in the patent, which are fire, medical, security. But if you want the claim term limited to those types of events, didn't you have an obligation to tell the Board this is our construction? No, Your Honor. I mean, I think, again, we don't have an obligation to do anything below as the patent donor. I think the question is, did the Board satisfy substantial evidence and the demands of anticipation doctrine? And I would say that it did not. And I think there was also an internal inconsistency. I see I'm running into my rebuttal time, so. Why don't we try to save some of your rebuttal time? Thank you. Okay. Mr. McCarthy. Good morning. Good morning, and may it please the Court. The challenged patent in this case is a simple one. It is directed to what information is included in an alert message to a responder when an event occurs. That alert message includes a primary component, which is basic information about the event, and a supplemental component, which is additional information that gives context to the event. Because of the simplistic nature, the petition set forth a single reference obviousness ground based on Theriault, arguing that a person of ordinary skill in the art would understand Theriault to teach each of the limitations of the challenge claims. Why didn't you do a 102? Why is this a 103? We could have done a 102, Your Honor. Right. But why did you do a 103 since the actual argumentation tracks like a 102? We took a conservative approach to argue what one skilled in the art would understand from Theriault under 103 rather than presenting it as a 102 argument. The fact that the Board found that Theriault was so good of a disclosure that it actually disclosed every element was proper under this Court's precedent that says you can bring a single reference under 103, and it can disclose all limitations. But our precedent includes precedents that say an IPR can only proceed on theories articulated in the petition, and your petition doesn't articulate an anticipation theory, does it? It sets forth a 103 ground, Your Honor. The petition is a 103 ground. What did the Board do? Didn't the Board only do an anticipation analysis? No, the Board instituted on a 103 ground. It instituted on obviousness, and it found all challenge claims unpatentable under that obviousness ground. Okay. But is it fair to say the only obviousness analysis they did was an anticipation analysis, and then they added as sort of the punchline, anticipation is the epitome of obviousness? I don't think that's necessarily true, Your Honor. They set forth the standard for obviousness at the beginning of their written description. They do discuss throughout the written description what a person of ordinary skill in the art would understand from the reference. Those characterizations are obviousness-related. So even though it chose to use the words epitome of obviousness versus obviousness itself, there's no patentable distinction there. Notably on this appeal, Fitbit concedes that Theriault discloses the purported invention of the 462 patent, namely the supplemental component of the alert message. Its only challenge is to the primary component, the basic information, which the 462 patent itself concedes was well-known in the prior art. Subsequently, there are only the two issues on this appeal, and they both relate to the primary component. The first is whether one skilled in the art would understand Theriault's marker identification code to disclose the 462 patent's claimed actor identification information. And second, whether one skilled in the art would understand Theriault's event classifications to satisfy the 462 patent's claimed emergency type classification. The board found, based on Theriault and the arguments presented below, that both of those were disclosed by Theriault. As to actor identification information, we heard some that the monitor ID was not included in the page message. That argument was first raised in their reply brief. They actually say in their opening brief at page 30, at the beginning the first sentence starts describing Theriault's page message. Then about a third of the way down, quote, the page message also, quote, includes data from GPS locator 60, unquote, and, quote, the portable monitor's unique identification, quote, end quote. They admit that the page message includes the monitor ID. At page 32, which counsel addressed, the monitor ID is used to verify messages to and from the monitor. The monitor ID is used to send messages to the monitor. The server knows that it's receiving a message from the monitor because of that unique ID. And on page 36, they, again, concede that Theriault's system disclosed use of a monitor's unique identification code in each page message sent from the monitor to the server. So the monitor ID code is included in the page message. He and I may be confused on the technology here, but he seemed to say it's not disclosed as going to the responder. Do you understand there to be a distinction that they're trying to have us draw? I think that is now a separate distinction they are trying to have you draw. But as presented below and based on Theriault's disclosure, the page message is forwarded to the responder. So if it's forwarded, one skilled in the art would understand anything that was included in the page message gets forwarded to the responder. So would you say this is both a new argument but also one that's immaterial? Yes. Because it's going to end up at the responder anyway? Because it ends up at the responder. Addressing the event type classification, they don't set forth a construction of what would be a proper classification. They say that crying episode is too specific, diaper change is too specific. I heard an opening that it's not even an emergency. The 462 patent's definition of what an emergency is is very broad. That definition includes any event that causes an actor to require or desire assistance regardless of the severity or whether a need for assistance is actually perceived. Counsel said that a crying baby is not an emergency. I don't have kids but I am an uncle and when there's a crying baby, I know that you go and attend to the baby. Therault defines its alarm conditions in the same way. It's any event that requires a response from a remote person, from the subscriber. The classifications in Therault aren't too specific. They're a shorthand of what the event is. For example, crying episode. That's a shorthand descriptor for a situation where a child is crying at an unusual time, such as 8.33 a.m., for a certain amount of time, such as 1 minute and 11 seconds. That's at appendix 830, 16.1-2, figure 9, which we cited to follow up. They argue that those classifications might not even be sent in the alert message. They are. Therault says that the information included in the page message can be provided via the user interface. So one skilled in the art would understand that the same information from the alert message is being provided in figure 9. So that figure 9 information would be included in the alert message. The other argument that I think we heard a lot of from your friend this morning has to do with whether the elements are disclosed in Therault arranged in the same order as in the challenged claims. Is that an argument that you think was properly put before us? And either way, what's your response to it? I don't think it was, but I do have a response, Your Honor. Therault is generating what it characterizes as detailed information. Its detailed information contains multiple subcomponents of it. One would be a classification of the event, as shown in figure 9. Additional information would be the sensor readings where one could infer what's causing the event. So the information is being generated and is as arranged in the claim. The alert message has the components that are described in the 462 PAC. If there's no other further questions, I'd be happy to get back to the topic. One other argument was that in Therault, their disclosed detailed information is getting carved up and some of it being assigned to the primary message component in the claim and other pieces of that detailed information being assigned to the supplemental information portion of the claim. And I guess they are arguing that that's some kind of artificial construct of how things inside of the Therault primary reference are getting artificially distributed to match up to different claim limitations. Can you just comment on that? I think this is a game of semantics. What Therault describes as detailed, the 462 patent describes some of it as primary or basic and some of it as supplemental. The fact is that the information is being generated. Some of it, by the 462 patent's definition, is basic. An event-type classification is basic. It's no patentable distinction that Therault chose to use the word detailed information for an event classification and that it uses detailed information for the supplemental information. Okay. We have your argument. Thank you, Mr. McCarthy. Thank you, Your Honor. Two and a half minutes for Mr. Kinnard. Your Honor, I heard my colleagues say that they raised a single reference obviousness theory. That's simply not true. And the board specifically said this was in anticipation. This was proceeding as... You're saying that petition doesn't even say single reference obviousness? It doesn't. It doesn't. It doesn't say... But it says obviousness. Yeah, it says graph one is obviousness based on Therault and nothing else. But what it doesn't... If that were true, then they fail for lack of proof because to show single reference obviousness, you have to show differences between the prior art and the claims and you have to show that there would have been modification of the prior art in order to... When have we ever said that you have to show differences? Well, that's in what 103 says, that you examine the differences in the art, and that single reference... But if there are no differences, have we said, aha, you have to show differences so then you can show that there aren't differences? Have we said that? But, Your Honor, that would dilute anticipation. I mean, anticipation is very precise, and that's the theory that the Board examined. And so I think there... What I'm hearing is we haven't said that. Well, I'm not sure, Your Honor, that I haven't looked at all the single reference obviousness claims because that was not what the Board decided. But we'd be happy to brief that to you, Your Honor, if you'd like. And Your Honor asked about if this anticipation issue and arrangement exactly in the claims was raised. That's clearly in 63 to 64, the blue brief. But that's it, right? In passing, in your last paragraph of the blue brief, not in your statement of issues and not elaborated anywhere else. No, that's not true, Your Honor. I think if you look at the summary of argument and actually each of the component arguments, we're constantly saying it's not disclosed in the alert message, right? We say that throughout the brief. So I don't think that that is accurate. And they haven't shown anything where there's a 4 plus 1 message that has all these elements. They maintain to this Court that anything sent by the page message, by the monitor in a page message to the monitoring server, that's all going to be in the alert message to the responder. Nothing ethereal says that, and that's implausible. You can't put all the data coming in from the devices in an alert message. They're two different things. They had to show an alert message to the responder, and they didn't. And so I think for all these reasons, Your Honor, the case should be reversed. Okay. Thank you. Case is submitted.